**NOT FOR PUBLICATION**                                      **[8]**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

|   |   |
|---|---|
| VICTORIA PERRY, | : |
| Plaintiff, | :   Civil Action No. 04-6255 (FLW) |
|  | : |
| v. | : |
|  | : |
| GOLD & LAINE, P.C., ET AL, | :   **OPINION** |
| Defendants. | : |
|  | : |

---

**APPEARANCES:**

For Plaintiff:

VICTORIA PERRY**,** PLAINTIFF <u>PRO</u> <u>SE</u>
ATRIUM EXECUTIVE SUITES
3000 ATRIUM WAY, #2204
MT. LAUREL, NJ 08054

For Defendants:
CARL D. POPLAR
1010 KINGS HIGHWAY SOUTH
BLDG 2
CHERRY HILL, NJ 08034

**<u>WOLFSON, United States District Judge</u>**

Defendants Gold & Laine, P.C., Carl D. Poplar, P.A., Jeffrey E. Gold, Esq., Evan E.

Laine, Esq., Carl D. Poplar, Esq., Christy A. Cicalese, Michele Laine, Brandon Laine and Jessica

Laine have filed a motion to impose monetary sanctions against  Victoria Perry, Plaintiff <u>pro se</u>

("Plaintiff" or "Ms. Perry"), pursuant to <u>Fed. R. Civ. P.</u> 11.   Ms. Perry, who on September 29,

2004 was declared a vexatious litigant by the Superior Court of New Jersey,  has filed numerous

1

lawsuits and complaints against Defendants in state and federal court, as well as with certain administrative agencies, all stemming from her interactions with her neighbor, Evan Laine, an attorney who once represented Ms. Perry's mother in a legal matter, and with Mr. Laine's family. All of her previous actions have been dismissed and/or declared frivolous.  By way of an Opinion dated May 25, 2005, which is hereby incorporated by reference, this Court dismissed all of her claims in the instant matter, finding that "[n]one of them state[d] a claim," and that they were "without any legal basis or justification," "baseless and scandalous." Perry v. Gold & Laine, P.C., 371 F.Supp.2d 622, 625-29 (D.N.J. 2005).  The Court also enjoined her from filing pro se complaints in this District without first obtaining leave of court. Id. at 629-32.

Defendants are presently seeking all of their fees and costs associated with this case, and they are also asking the court to impose an "extraordinary" and "substantial" sanction against Ms. Perry to be deposited into the State of New Jersey's treasury, the Superior Court's fund/treasury, the United States District Court, District of New Jersey's fund/treasury, or the New Jersey IOLTA fund.  Ms. Perry has sent numerous faxes to the Court arguing, inter alia, against the imposition of any sanctions and furthermore, that I should recuse myself.  For the reasons stated below, Ms. Perry's request for my recusal is denied and the Court finds that monetary sanctions are warranted.

## I. BACKGROUND[1]

In 1996 or 1997, Evan Laine, Esq. represented Ms. Perry's mother, Ollie, in a personal injury suit.  In 1998, Ms. Perry moved into the house across the street from Evan Laine and his

---

[1]While I described Ms. Perry's history of legal maneuvering in the May 25, 2005 Opinion, it is necessary to do so here, as well.

family, on Saxby Terrace in Cherry Hill.  In December 1998, Evan Laine and his law firm, Gold & Laine, P.C., agreed to represent Ms. Perry's mother once again.  In 1999, Ms. Perry sent her neighbors, the Laines, various unsolicited items, including a disturbing letter discussing Plaintiff's religious beliefs, volunteering that Plaintiff was a virgin, and describing several sexual acts in great detail.  In September 1999, the Honorable Francis J. Orlando, A.J.S.C. issued an order granting leave for Defendant Evan Laine and his law firm, Gold & Laine, P.C. to be relieved as counsel to Ms. Perry's mother.  In March 2000, Plaintiff twice attempted to file criminal charges against Defendants Evan Laine and Jeffrey Gold, a partner at Mr. Laine's law firm, for perjury, harassment, conspiracy and other charges.  The Honorable Jeffrey Karl, J.M.C. and the Honorable John McFeeley, J.M.C. found that there was no probable cause on either occasion.  In July 2000, Ms. Perry filed a statement with the Cherry Hill Police Department accusing Judge Karl of conspiring and discriminating against her.  She even attempted to file ethical charges against Judge Karl before the Advisory Committee of Judicial Conduct.  All charges against Judge Karl were declined and/or found meritless.

In March 2001, Plaintiff filed an ethics complaint against Defendant Evan Laine, Esq. Defendant Carl D. Poplar, Esq., representing Mr. Laine, filed a motion to dismiss the complaint in its entirety, which was granted.  In April 2001, Plaintiff filed an ethics grievance against Defendant Poplar, which was also dismissed.  In July 2001, Plaintiff sent letters to the New Jersey Division of Youth & Family Services and Cherry Hill Police Department alleging that the Laines had neglected their teenage children by leaving them home alone.

In October 2001, Plaintiff filed a complaint in the United States District Court for the District of New Jersey against Defendants Evan Laine, Jeffrey Gold, Gold & Laine, P.C.,

Michele Laine (Evan Laine's wife), Christy Cicalese (an employee of Gold & Laine, P.C.), Carl Poplar, and Poplar & Eastlack, the predecessor firm to Carl D. Poplar, P.C.  Ms. Perry later sought to add Defendant Brandon Laine, son of Evan and Michele Laine, as a defendant.  The Honorable Stephen M. Orlofsky dismissed the entire case, with prejudice, on March 27, 2002.  Plaintiff sought reconsideration of the dismissal and a recusal of Judge Orlofsky, both of which Judge Orlofsky dismissed.  Ms. Perry appealed the case to the United States Court of Appeals for the Third Circuit, and the Third Circuit affirmed Judge Orlofsky on April 24, 2003.

In 2002 and 2003, Plaintiff filed complaints against Defendants with the New Jersey Superior Court, Camden County, Case No. CAM-L005235-02, and with the New Jersey Superior Court, Mercer County, Case No. MER-L-803-03.  The Honorable John A. Fratto, J.S.C. dismissed the Camden County complaint and the Honorable Linda Feinberg, A.J.S.C. dismissed the Mercer County complaint.  Ms. Perry appealed Judge Fratto's decision and also filed another complaint against Defendants in the Superior Court, Camden County in February 2004.  However, Defendants were never served with this complaint.  Plaintiff also instituted charges against Evan and Michele Laine in Cherry Hill Municipal Court in February 2004.

On August 4, 2004, Judge Fratto ordered that Ms. Perry "shall be restrained and prohibited from filing and/or instituting lawsuits, Complaints or other legal proceedings which are under and/or subject to the jurisdiction of the Superior Court of New Jersey, whether they be Civil, Criminal, Quasi Criminal and/or Administrative, against ... Gold  & Laine, P.C.; Jeffrey E. Gold, Esquire, Evan E. Laine, Esquire; Carl D. Poplar, P.C.; Carl D. Poplar, Esquire, Christy Cicalese; Michele [sic] Laine, Brandon Laine; and Jessica Laine" without prior approval of a Judge of the Superior Court.  Gold & Laine v. Perry, Docket No. L-1402-04, Order For

4

Restraints (Aug. 4, 2004).  The only exception to Judge Fratto's order is that Ms. Perry "is permitted to file or institute lawsuits, Complaints, legal proceedings, without prior approval, through an attorney licensed to practice law in the State of New Jersey who has duly filed an appearance on her behalf in each proceeding and said attorney will sign each pleading and/or document regarding the Complaints, lawsuits and other legal proceedings." Id.

On September 10, 2004, Judge Bernardin, a Municipal Court Judge in Cherry Hill, wrote Ms. Perry a letter indicating that he will "not be making a probable cause determination with regard to [her] pending complaints" because Judge Fratto's August 4, 2004 Order precludes him from doing so.  He also informed Ms. Perry that "[p]ursuant to the Order [she] can make application to Judge Fratto" and that "[he] will await direction from the Superior Court."  Letter from Honorable Daniel Bernardin to Victoria L. Perry of Sept. 10, 2004.

On September 29, 2004, Judge Fratto issued an Amended Order with the same terms as the August 4, 2004 Order but which also designated the Honorable John McFeeley, III, P.J.M.C. as the judge to review any Municipal Court complaint filed by Ms. Perry against any of the aforementioned defendants.  Gold & Laine v. Perry, Docket No. L-1402-04, Amended Order (Sept. 29, 2004).

Plaintiff filed another complaint  against Defendants in the United States District Court for the District of New Jersey on November 24, 2004.  The complaint, docketed as Case No. 04-CV-5842 and encompassing the same allegations made herein, was dismissed by the Honorable Robert B. Kugler, U.S.D.J. on December 10, 2004 pursuant to Fed. R. Civ. P. 8(a). On December 21, 2004, Plaintiff filed a complaint and one day later, on December 22, 2004, filed the instant

nine-count complaint, which was denominated as an amended complaint.  Both were assigned a

new docket number: Case No. 04-CV-6255.[2]

Ms. Perry's most current complaint in case number 04-CV-6255 asserted claims for

"Harassment," "Conspiracy against Civil Rights by Case Fixing in Municipal Court,"

"Conspiracy against Civil Rights by Case Fixing in Camden County Superior Court,"

"Conspiracy Against Civil Rights by Abuse of Process," "Fraud Upon the Court," "Intentional

Infliction of Emotional Distress," "Fraud," "Conspiracy Against Rights By Endangerment:

Knowingly Creating a Dangerous Environment for a Repeat Auto Accident," and violations of 42

U.S.C. § 1985 and § 1981, against Gold & Laine, P.C., Carl D. Poplar, P.A., Jeffrey E. Gold,

Esq., Evan E. Laine, Esq., Carl D. Poplar, Esq., Christy A. Cicalese, Michele Laine, Brandon

Laine and Jessica Laine.  Am. Compl.

On January 3, 2005, Defendants filed a motion to dismiss under Rule 12(b)(6), or, in the

alternative, for summary judgment under Rule 56, and a motion to have Ms. Perry declared a

vexatious litigant.  Contemporaneous with filing the motion, Defendants issued a letter pursuant

to Federal Rule of Civil Procedure 11(c)(1)(A) enclosing a proposed form of Rule 11 Motion,

which was not filed with the Court. In accordance with the Rule, Ms. Perry was advised that she

had twenty one days to withdraw and/or dismiss her litigation. Plaintiff never withdrew or

dismissed her litigation.

Ms. Perry filed her opposition to Defendants' motion to dismiss more than three months

late and two weeks after this Court wrote the parties a letter on April 12, 2005, indicating that it

---

[2]There has been much confusion among the parties regarding the docket numbers
assigned to Plaintiff's cases.

was considering Defendants' motion as unopposed.[3]  By way of the Opinion dated May 25, 2005, this Court dismissed all of Plaintiff's claims in the instant matter.  The Court found that Plaintiff's conclusory and unsupported allegations that Defendants conspired to fix cases, along with the Laine Defendants' conduct, namely, parking their vehicles on same side of the street where their home is located and across from Plaintiff's driveway, formed the basis for Plaintiff's entire complaint.  The Court also found that Plaintiff's claims were "without any legal basis or justification," were "baseless and scandalous," and that "[n]one of them state[d] a claim." Perry v. Gold & Laine, P.C., 371 F.Supp.2d 622, 625-29 (D.N.J. 2005).  Furthermore, the Court enjoined her from filing pro se complaints in this District without first obtaining leave of court, id. at 629-32, and ordered that Defendants had thirty days in which to file a motion for monetary sanctions pursuant to Fed. R. Civ. P. 11.

On June 3, 2005, Plaintiff filed a motion for reconsideration of the Court's Opinion and Order of May 25, 2005 in case number 04-CV-6255.  The Court denied the motion by Order dated July 1, 2005, finding that Plaintiff's arguments "merely present[ed] a recapitulation of the arguments considered by the Court before rendering its original decision" and stating that the Court  was "confident that it did not overlook anything that might reasonably have caused it to reach a different conclusion." Perry v. Gold & Laine, Et Al., Case No: 04-CV-6255 (FLW), Order  (D.N.J. July 1, 2005).

On December 10, 2004, Plaintiff also filed a complaint in this Court against Judges

---

[3]Indeed, while Plaintiff has sent the Court hundreds of pages worth of allegations and arguments, she has yet to file timely opposition to any of the motions filed in this case and in case number 04-6102.

Fratto, Bernardin, McFeeley and Orlando, docketed as Civil Action No. 04-CV-6102.  On

December 31, 2004, Plaintiff wrote me a letter asking me to handle both this case and her Civil

Action No. 04-6102, which was then pending before the Honorable Robert B. Kugler, on the

basis that I could be fair because I had "no prior connection to this file."  Letter from Victoria L.

Perry to the Honorable Freda L. Wolfson of Dec. 31, 2004 (emphasis in original).  On January 6,

2005, Case No. 04-CV-6102 was reassigned from Judge Kugler to this Court for reasons

unrelated to Ms. Perry's request.  On January 14, 2005, Deputy Attorney General Joanne Stipick

wrote Plaintiff a letter stating that it was the Attorney General's Office's "understanding that

[Ms. Perry had] not yet effected proper service upon" Judges Fratto, McFeely and Orlando and

advised Plaintiff as to the proper person who is "authorized to and will accept service on behalf

of" Judges Fratto, McFeely and Orlando, and that the person had agreed to waive formal

summons.  Letter from Deputy Attorney General Joanne Stipick to Victoria L. Perry of Jan. 14,

2005.

On May 17, 2005, the Court entered a Notice of Call for Dismissal Pursuant to Fed. R.

Civ. P. 4(m), indicating that on June 17, 2005, it would dismiss Plaintiffs's claims against

Defendants Hon. John A. Fratto, Hon. John McFeely and Hon. Francis J. Orlando "for failure to

effect service on the summons and complaint within 120 days of complaint unless [she]

establish[es] that service was effected within said 120 days or unless on that date good cause is

shown for failure to do so" and indicating that Plaintiff should file any responsive pleading the

notice on or before June 10, 2005.   Perry v. Hon. John A. Fratto, Et Al., Case No: 04-CV-6102

(FLW), Order  (D.N.J. May 17, 2005).  Plaintiff never filed any response or opposition in

connection with the Notice.  On June 15, 2005, Deputy Attorney General Stipick sent a letter to

8

the Court indicating that Ms. Perry never attempted to effect service as outlined in the letter, and that Ms. Perry's original attempt to serve the judges did not comply with <u>Fed. R. Civ. P.</u> 4(e)(1) and <u>N.J. Ct. R.</u> 4:4-3 because the documents were not personally delivered to any of the judiciary defendants.  On June 20, 2005, this Court dismissed Plaintiff's claims in that case as to Defendants Hon. John A. Fratto, Hon. John McFeely and Hon. Francis J. Orlando because Plaintiff failed to effect service of the summons and complaint upon those defendants within 120 days of the filing of her complaint and because good cause had not been shown as to why service had not been effected.  <u>Perry v. Hon. John A. Fratto, Et Al.</u>, Case No: 04-CV-6102 (FLW), Order (D.N.J. June 20, 2005).

## II.  Defendants' Motion for Rule 11 Sanctions and Request For the Court's Recusal

Defendants filed the instant motion for Rule 11 sanctions on June 3, 2005, seeking all of their fees and costs associated with this case, and they are also asking the court to impose an "extraordinary" and "substantial" sanction against Ms. Perry to be deposited into the State of New Jersey's treasury, the Superior Court's fund/treasury, the United States District Court, District of New Jersey's fund/treasury, or the New Jersey IOLTA fund.  Plaintiff never submitted any written opposition to the Rule 11 motion, and the Court sent a letter to the parties indicating that I would decide the Rule 11 motion "based on the papers already submitted and arguments made at a hearing" scheduled for July 14, 2005.  However, on the afternoon of July 13, 2005, the day before the argument, Plaintiff sent a fax to the Court asking that the "Oral Argument for Defendants' Motion for Sanctions be <u>adjourned</u>, pending an Evidentiary Hearing." Facsimile from Victoria L. Perry to the Honorable Freda L. Wolfson of July 13, 2005 (dated July 11, 2005) at 1 (emphasis in original).  In her fax, Ms. Perry explained to the Court: "I am completely

9

confident that, upon seeing my evidentiary support for most of the statements of Your Opinion

and supporting evidence for each count of my lawsuit, Your Honor will reverse your Opinion and

VACATE your Order.  As for timeline, it will cost me approximately $3,000 dollars to produce

the evidence for all parties and require approximately 2 weeks to compile.  Thus, I am asking the

Court to schedule an Evidentiary Hearing some time in August."  Id. at 2. The Court responded

to Ms. Perry that day via fax, instructing her that "[a]ny arguments that [she had] regarding the

propriety of sanctions should be raised at the argument," which would take place the next day, as

scheduled.  Letter and Facsimile from the Honorable Freda L. Wolfson to Victoria L. Perry of

July 13, 2005.

Oral argument on Defendant's Rule 11 motion took place on July 14, 2005, at which Ms.

Perry, for the most part, argued the merits of the claims that had already been dismissed, see Oral

Arg. Transcr. at 12:4-16:3, 17:3-23:17, 26:22-43:22, 58:2-26, 60:20-22, 64:1-5, instead of

arguing against sanctions.  On several occasions during the argument, the Court had to remind

Ms. Perry that her claims were no longer before the Court and that only the Rule 11 motion was

before the Court at that time.  Id. at 8:21-9:11, 30:6-13, 31:19-20, 37:2-5, 38:4-39:5, 54:7-11,

59:3-6.

It is apparent that Ms. Perry does not understand the concept of a motion to dismiss and

the effect that such a motion has when it is granted by a court.  When arguing that her

claims were not frivolous, Ms. Perry mentioned several times that discovery had never taken

place regarding any of claims and that a factual investigation would have revealed, and would

still reveal, that her claims have merit. Id. at 8:15-20, 30:6-13, 36:19-37:1.  The Court explained

to her that "[i]f the Court finds as a matter of law that the claims do not state a claim ... there is

10

no need to place anybody through the burden of discovery. ... In these cases the court has found

in every instance that your claims even given the facts as stated do not state viable claims.  That's

why there has been no discovery."  Id. at 9:2-11; see also id. at 37:2-6 ("[Y]ou do not need

discovery and evidence if your claims cannot state a claim under the law under any set of facts.

They don't state claims.").

At the conclusion of the argument, the Court instructed Ms. Perry that she had until July

21, 2005 to file with the Court and submit to Mr. Poplar  a sworn affidavit reflecting her

earnings, bank accounts, other assets held and "matters that reflect [her] ability to pay," as well as

any obligations, including those associated with caring for her mother, loans, mortgage payments

and "things of that nature which would reflect what gets deducted from [her] salary and what is

available as expendable income."  Id. at 65:2-66:17.

On July 15, the day after the argument, Ms. Perry sent the Court a fax stating that "19-

year old Defendant Jessica Laine - Evan and Michele Laine's daughter - parked her car in the

area at issue and in the area of a prior accident just last evening.... I ask that Your Honor

immediately: a) DENY these Defendants Motion for Sanctions, as their own conduct has

continually contributed to my petitioning the court for protection and relief. b) Order a

Temporary Restraining Order, pending my formal Motion with evidences for an Injunction, to be

filed with the Court on Monday, July 18."   Facsimile from Victoria L. Perry to the Honorable

Freda L. Wolfson of July 15, 2005 (dated July 14, 2005)(emphasis in original).

On July 19, 2005, instead of formally filing a motion, Ms. Perry again sent the Court a

fax, entitled "Emergent Motion for Injunction Against Defendant Laine Family."  Facsimile from

11

Victoria L. Perry to the Honorable Freda L. Wolfson of July 19, 2005 (dated July 18, 2005)(emphasis in original).  According to Ms. Perry, "[t]he purpose of this injunction/restraining order is to keep the Laines away from me and to formally enforce the oral admonition from Judge John Fratto-given to the Laine family on <u>May 14, 2004</u> ... and again on <u>July 23, 2004</u> to the Laines- copies attached.  This antagonizing, harassing and physically dangerous conduct has been repeated in nature by the Laines for over a year and they were admonished twice by Judge Fratto and repeatedly by me-<u>beginning November 3, 2003</u>." <u>Id.</u> at 1 (emphasis in original).  Ms. Perry also argues in this submission that "<u>[i]t would be a miscarriage</u> <u>of justice for this Court to Grant their petitions for a sanction against me, when they have</u> <u>repeatedly ignored a Court's admonition to stay away from me</u>."  <u>Id.</u> at 2 (emphasis in original).

According to the portion of the May 14, 2004 transcript provided by Ms. Perry, Judge Fratto said:

> I am not going to grant your motion for restraints or injunction.  I think it's--it's not a--the type of thing that requires a formal order of restraint.  <u>I do believe you</u> <u>when you say that Mr. Laine was waving at you and so forth.  And I'm going to</u> <u>suggest to Mr. Poplar that he tell the Laines to refrain from that sort of behavior.  I</u> <u>don't think it's illegal, I don't think it's anything that requires a formal</u> <u>prohibition, but given the tension between the parties, it's probably something that</u> <u>good senses would say don't do.  So I'm suggesting to Mr. Poplar that he convey</u> <u>that message to his clients.</u>  But the motion to--for the restraints will be denied. (Emphasis added by Ms. Perry).

According to the portion of the July 23, 2004 transcript provided by Ms. Perry, Judge Fratto said:

> I understand she has a position on Wall Street.  She has access to a PC and she pumps out documents like you wouldn't believe.  And this has been going on for years.  So, did Mr. Laine in--in frustration, park his car in the--in a portion of the

street where he knew it would annoy her?  Did he wave at the cameras that he knows are on him when he's going in and out of his house? Maybe he did. Probably he did.  Does that justify the filing of all these complaints?  I don't think so.  People put up spike fences and are permitted to do so as long as it's within ... the law.  So, to--to bring a complaint against somebody because they park their car legally on the street in a place where you don't like it to be, whether they did it so, as a matter of spite or convenience, I don't know.  <u>But they're adults and they should act as adults and--I recommended to Mr. Laine through Mr. Poplar that he try not to annoy her as much as possible.</u>  But, he has done nothing illegal.  He has done nothing improper." (Emphasis added by Ms. Perry).[4]

On July 21, 2005, Ms. Perry responded to the Court's request for financial information. However, in her response, she states that she is "not able to lawfully provide the Defendants or Your Honor with my financial information."  Facsimile from Victoria L. Perry to the Honorable Freda L. Wolfson of July 21, 2005 (dated July 20, 2005) at 1.  She  explains that "the issue of this case is not how much sanctions to 'deter' me from filing-the issue is for the Court to get to the root of the problem-Gold & Laine's misconduct." She also states:

<u>Your Honor, you were recommended to your judgeship to the federal bench by the current president - George Bush - in 2002.  President Bush supports 'family values, as I do scripturally.  I would hope that, rather than trivializing Evan Laine's unwanted gestures towards me, etc., through my camera - as Your Honor has done, that you would take the position as the President who recommended you to judge others - that a married man and especially an officer of the Court as Attorney Evan Laine - has no right having any contact with a single woman - and especially one as me - who repeatedly rejects him.  Evan Laine's conduct is against the very 'family values' for which President Bush supports and the one who recommended you to the Bench. He nor Gold & Laine P.C. at al is entitled to relief as a sanction, let alone the disclosure of my finances.</u>

---

[4]It is ironic that Ms. Perry is relying upon Judge Fratto's statements as the bases for the injunction she is seeking.  Not only did Ms. Perry sue Judge Fratto in case 04-CV-6102 and allege, among many other things, that he was part of the conspiracy against her, but, in her motion for reconsideration that she filed not long ago, Ms. Perry stated that "Judge Fratto - on the record - made biased statements, and showed a reckless disregard for the truth."  Pl.'s Mot. For Reconsideration at 5.

13

<u>        Id.</u> (emphasis in original).

Near the conclusion of her single-spaced, ten page submission, Plaintiff argues that Defendants' "asking for sanctions 'in multiples of 6' is a malevalent [sic] intent to take me out of my home and assets and remove me as 'neighbor' to them.  Michele Laine feels this would suit her purposes as she believes the Court taking my home would prevent her husband from thinking of me." <u>Id.</u> at 10.  She also asks the Court to "report the unethical conduct of Attorneys Evan Laine and Carl Poplar."  <u>Id.</u>

On July 25, 2005, Ms. Perry sent to the Court a copy of her "Resolution/Settlement Proposal to Cherry Hill Township,"which she labeled "Docket #04-6255," but in actuality pertains to case number 04-6102, her case against the judges.  In her proposal, Ms. Perry is seeking, among other things, an ordinance "prohibit[ing] parking opposite residential driveways," "Termination of Judge Bernardin," "Diversity Training for <u>all</u> Cherry Hill Township Municipal Court Judges," and "DAMAGES."  Facsimile from Victoria L. Perry to the Honorable Freda L. Wolfson of July 25, 2005.

Plaintiff sent the Court another fax on July 27, 2005, stating: "<u>I am requesting your recusal BEFORE you make a decision regarding Gold & Laine P.C. et al sanctions Motion, as my reasons are not dependent upon your decision</u>."  Facsimile from Victoria L. Perry to the Honorable Freda L. Wolfson of July 27, 2005 (dated July 26, 2005) at 1.  According to Ms. Perry, the Court's "demeanor and repeated statements of sarcasm towards me during Oral Argument on July 14, 2004 [sic], as well as your directly asking me private financial information in open court, to be provided to the opposing parties (Defendants-Gold & Laine P.C. et al)-even

14

though admitting you had not made a decision on the sanctions, is indicative of the perception of bias."  Id.  She makes clear that she is seeking my recusal from both of her cases before me: 04-CV-6255 and 04-CV-6102, and goes on to state:

> I am asking that you recuse yourself due to conduct prejudicial to the fair administration of justice and conduct and statements that give rise to the appearance of bias and the perception of bias.  Based on the fact that you have refused to accept evidence that these Defendants have engaged in conduct which - at a minimum - is intentional, deliberate and unethical, I do not believe that you have the ability to objectively judge my cases and am asking for your recusal and that this case be handled by another judge.
>
> Id.
>
>      ...
>
> For all the persons who've seen those photographs, Your Honor is the only one who sees 'no harassment' and whose only focus was on the 'method' (a camera) rather than the content (the photographs showing evidence of malicious intent).  You see, 'objective observers' have already seen what your Honor refuses to see - leading to the 'perception of bias' and appearance of bias.
>
> Id. at 2.

Ms. Perry also asked me to "do the just thing in VACATING [my] decision to dismiss [her] case, VACATE [my] Restraints Order for the U.S. District Courts and do so PENDING an EVIDENTIARY HEARING by an impartial judge."  Id. at 3. Ms. Perry indicated in her fax that "[t]his letter is to be immediately followed by a formal Motion."  Id.[5]  On August 2, 2005, she sent another fax to the Court, serving as "a reminder to [the Court] that [she has] previously requested [its] recusal" and also arguing that my "bias is evident when [I] make statements that [I] 'would dismiss' any claims [she] 'would make' (meaning future)" because it shows that I

---

[5]On July 29, 2005, Mr. Poplar forwarded to the Court a copy of an Order from the Supreme Court of New Jersey dated July 27, 2005, denying Ms. Perry's motion to vacate the special master's dismissal of the ethics complaint against Mr. Laine.

"have already made up [my] mind to dismiss [her] claims before [she] ever make[s] them," which is "<u>prejudicial</u>."  Facsimile from Victoria L. Perry to the Honorable Freda L. Wolfson of August 2, 2005 (dated August 1, 2005)(emphasis in original).

As of this date, Ms. Perry has not filed a formal recusal motion.  Nonetheless, I will address Ms. Perry's request for my recusal before I address sanctions.  While Ms. Perry cites to <u>In re Kensington Int'l Ltd.</u>, 353 F.3d 211 (3d Cir. 2003), she does not cite to a particular section of 28 U.S.C. § 455 which she deems applicable.  According to 28 U.S.C. § 455(a), "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. § 455(b)(1) provides that a judge shall self-disqualify where the judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."

Section 455(a) is a "catchall" recusal provision, covering circumstances in which the judge has an interest in the case or relationship to a party or attorney, as well as circumstances in which the judge has bias or prejudice.  <u>Liteky v. United States</u>, 510 U.S. 540, 548 (1994).  The statutory language mandates an objective rather than subjective inquiry.  <u>Id.</u>  The pertinent inquiry is "whether a reasonable person knowing all the circumstances would harbor doubts concerning the judge's impartiality."  <u>In re Kensington Int'l Ltd.</u>, 353 F.3d 211, 223 (3d Cir. 2003) ["<u>Kensington I</u>"] (quoting <u>Jones v. Pittsburgh Nat'l Corp.</u>, 899 F.2d 1350, 1356 (3d Cir. 1990).  Section 455(b)(1) is a narrower provision that only concerns personal bias or personal knowledge of disputed evidentiary facts.  <u>Id.</u> at 220.

A party seeking recusal need not show actual bias on the part of the court, but rather the

possibility of bias.  In re Prudential Ins. Co. Sales Litig., 148 F.3d 283, 343 (3d Cir. 1998) (citing Liteky, 510 U.S. at 553).  However, "[b]iases stemming from facts gleaned during judicial proceedings themselves must be particularly strong in order to merit recusal."  Id. (quoting United States v. Antar, 53 F.3d 568, 574 (3d Cir. 1995)).  "The court must 'reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.'"  Id. (quoting Liteky, 510 U.S. at 555).

Since Ms. Perry does not clearly articulate her arguments in support of my recusal, I will construct her arguments for her, as best I can, as I did in the past.  First, she argues, in effect, that because "many objective observers" see that the Laines are harassing her--harassment which I "refuse[] to see"--a  reasonable person knowing all the circumstances would harbor doubts concerning my impartiality.  Of course, nowhere does Ms. Perry identify the "many objective observers."  Indeed, the portion of the transcript that Ms. Perry faxed to the Court on July 19, 2005 contains Judge Fratto's statement from the July 23, 2004 hearing that Evan Laine "has done nothing illegal ...[and] ... done nothing improper." Facsimile from Victoria L. Perry to the Honorable Freda L. Wolfson of July 19, 2005.  However, when Ms. Perry uses the phrase "objective observer," she is surely not referring to a judge, because no Superior Court Judge or United States District Judge has ever found that the Laines harass Ms. Perry.   In fact, according to Ms. Perry, none of the judges who have made rulings that were adverse to her were "objective observers," as evidenced by the lawsuit she filed against Judges Fratto, McFeeley, Bernardin and Orlando, alleging that they conspired against her and the fact that she has sought the recusal of the three District Court judges assigned to preside over her cases, Judges Orlofsky, Kugler and, now, I. No reasonable person would see the kind of malicious harassment that Ms. Perry sees

17

when the Laines park their vehicles on same side of the street where their home is located and across from Plaintiff's driveway.

It was not long ago that Ms. Perry specifically wanted me to preside over her cases.  So much so, in fact, that she wrote me a letter dated December 31, 2004, asking me to handle both this case and her Civil Action No. 04-6102, on the basis that I could be fair because I had "no prior connection to this file."  Letter from Victoria L. Perry to the Honorable Freda L. Wolfson of Dec. 31, 2004 (emphasis in original).  However, in my Opinion of May 25, 2005–the Opinion in which I dismissed Plaintiff's claims–I predicted that this day would come:

> It is obvious that Plaintiff has a distrust for the judicial system and anyone involved therein.  If an attorney or a judge does not see things her way, Plaintiff believes that attorney or judge is involved in a conspiracy against her.... [She believes] that each and every judge to issue a ruling adverse to her did so because of an unfairness or bias, and not because her case was simply meritless, baseless and frivolous.  No doubt, given her history and based upon my rulings today, Ms. Perry will come to the same conclusion about me.
>
> Perry v. Gold & Laine, P.C., 371 F.Supp.2d at 631.

Now, having apparently determined that I will not rule in her favor either, she states: "I requested Judge Wolfson as, to my knowledge, she had no prior connection to this file and I wanted an impartial judge.  Since that time, Judge Wolfson has behaved and made statements indicative of bias and partiality in favor of Defendants."  Facsimile from Victoria L. Perry to the Honorable John W. Bissell of August 4, 2005 (dated August 3, 2005).[6]  While Ms. Perry

---

[6]Ms. Perry also sent two faxes to Chief Judge John W. Bissell asking for my recusal.  In a letter to Ms. Perry dated August 8, 2005, Judge Bissell informed Ms. Perry that "[a]ny application for recusal must be decided by the Judge to whom the case is assigned" and advised her that her "motion for recusal must be addressed by Judge Wolfson."  Letter from Chief Judge John W. Bissell to Victoria L. Perry of August 8, 2005.

18

assumes that a judge who issues a ruling that is adverse to her did so as a result of bias, I doubt any reasonable person would have doubts about my impartiality or believe that I am somehow biased against Ms. Perry.  Indeed, in my prior opinion I attempted to construct legal causes of action to accompany Ms. Perry's rambling allegations--something she was unable to do.  Only Ms. Perry, who is searching for a judge in any court, state or federal, who will rule in her favor, would claim to possess such a doubt or belief.

Second, she argues, in effect, that I was sarcastic towards her at oral argument and that this alleged sarcasm evidences an antagonism towards her that makes it impossible for me to render fair judgment.  While I dispute Ms. Perry's contention that I was sarcastic towards her, any frustration that I might have exhibited at argument with Plaintiff's inability to respond to the Court's questions falls very far short of the "high degree" of antagonism or favoritism set forth in Liteky.

Finally, Ms. Perry argues, in effect, that I am prejudiced because I have already made up my mind to dismiss any future claims she might file.  In support of this contention, Plaintiff is presumably referring to the line from my May 25, 2005 Opinion that provides: "To the extent that Plaintiff presents new claims in her submissions that were not asserted in her Complaint, the Court finds that they would also not state a claim." Perry v. Gold & Laine, P.C., 371 F.Supp.2d at 631.  This passage troubled Plaintiff at oral argument, as well, as evidenced by the fact that she asked me about it: "[I]n your opinion you stated that even if I were to as you state here to the extent plaintiff presents new claims that were not asserted in her complaint the Court finds they will also not state a claim." Oral Arg. Transcr. at 10:1-4.  In response, I said:

19

> Let me make clear what that meant so you don't have any misunderstanding.  If
> you recall, ... you did not timely submit opposition to the motion to dismiss.  In
> fact, the Court had to contact you and tell you the time for responding had gone
> by.  I  received a submission.  In that submission you attached a transcript of a
> conversation that you taped with a municipal court clerk which you believed in
> some way as well supported the claims you were making of some sort of
> conspiracy.  That transcript being submitted and that material was new and not in
> your complaint.  So I said to the extent your submission in opposition was
> presenting new material to the Court, that new material would not state a claim.
> That's what I said in the opinion and that's what that means.  <u>Id.</u> at 10:5-19.

No further explanation is necessary here.  Ms. Perry is also troubled by the line from the

Opinion that explains: "To the extent that Plaintiff asserts any claims pursuant to 42 U.S.C. §

1983, such claims are dismissed, because Plaintiff does not allege that any Defendant in this case

is a state actor or that any Defendant here acted under color of state law." <u>Perry v. Gold & Laine,</u>

<u>P.C.</u>, 371 F.Supp.2d at 628.  According to Ms. Perry, this statement shows that the Court's "mind

is <u>already</u> 'closed' or prejudiced."  Facsimile from Victoria L. Perry to the Honorable John W.

Bissell of August 4, 2005 (dated August 3, 2005)(emphasis in original).  However, this line,

much like the above mentioned excerpt, relates to the fact that while Ms. Perry's complaint in

this case does not assert a § 1983 claim and she does not allege herein that any Defendant in this

case is a state actor or acted under color of state law as required to sustain a § 1983 claim, several

of her submissions made to the Court subsequent to the filing of her complaint allege violations

of § 1983.  It is possible that  Ms. Perry has confused her cases again, as she often does; her

complaint against the four judges asserts § 1983 claims.  Whatever the case may be, it is

abundantly clear that Ms. Perry's request for my recusal is simply her latest attempt to extricate

her case from a judge whom she believes does not see things her way; that request is denied.

Now, I will address Defendants' motion for Rule 11 sanctions.

Rule 11 provides that by submitting a "pleading, written motion, or other paper" to the court, a person is certifying, among other things, that to the best of her knowledge, the submission was not filed for an improper purpose, the claims and legal arguments contained therein are supported by a existing law and/or are non-frivolous, and the facts contained therein are supported by existing evidence or are likely to be supported after reasonable inquiry. Fed. R. Civ. P. 11(b).   "Rule 11 sanctions are appropriate only in the exceptional circumstance where a claim or motion is patently unmeritorious, or frivolous." In re Cendant Corp., 96 F.Supp.2d 403, 405 (D.N.J. 2000)(internal quotes and citations omitted).   Status as a pro se litigant does not insulate one from the imperatives of the rule. See Fed. R. Civ. P. 11; see also Business Guides, Inc. v. Chromatic Communications, Inc., 111 S.Ct. 922, 932-33 (1991); Abdul-Akbar v. Watson, 901 F.2d 329, 334 n. 2 (3d Cir.), cert. denied, 111 S.Ct. 237 (1990); Gagliardi v. McWilliams, 834 F.2d 81, 82-83 (3d Cir.1987); 2A J. Moore & J. Lucas, Moore's Federal Practice, ¶ 11.02[j] at 11-17 (2d ed. 1990).

In support of their motion, Defendants argue that "[t]here has not been one arguably meritorious claim, allegation, grievance, complaint or lawsuit initiated by Ms.Perry" and contend that "[t]he time, energy and expense to respond to this onslaught of spurious and frivolous litigations and legal matters is enormous."  Defs.' Br. In Support of Mot. For Sanctions at 2.  At oral argument, Ms. Perry argued, "I believe in what I did," and that monetary sanctions are inappropriate because "the purpose for sanctions is to deter a person from filing what they feel is frivolous....  I don't feel my complaints are frivolous."[7]  Oral Arg. Transcr. at 58:22, 60:1-4.

---

[7]Ms. Perry has even resorted to threatening to file an appeal, in hopes that the specter of an appeal would influence the Court's decision regarding Rule 11 sanctions.  See Oral Arg.

However, courts use an objective/reasonableness standard when making determinations pursuant to Rule 11, even in those cases involving pro se litigants.  Abdul-Akbar v. Watson, 901 F.2d 329, 334 n. 2 (3d Cir.), cert. denied, 111 S.Ct. 237 (1990)(quoting Fed R. Civ. P. 11 advisory committee note, reprinted in 97 F.R.D. 165, 199 (1983) "Rule 11 continues to apply to anyone who signs a pleading, motion, or other paper ... [T]he standard is the same for unrepresented parties....").

The Court accepts Ms. Perry's assertion that she believes that her claims are not frivolous.  However, Ms. Perry, who is apparently well-educated and successful in business, has a distorted perception of reality where it concerns these Defendants.  See Oral Arg. Transcr. at 56:1-16.  Indeed, in her papers, as well as at oral argument, Ms. Perry compared her alleged oppressors to those in Nazi Germany or the Abu Gharib prison.  See id. at 55:9-24.  In her fax from July 13, 2005, Ms. Perry states: "I have the evidence that my cases were fixed, as stated in my lawsuit.  The appropriate framework for that would be in an Evidentiary Hearing, where the Court can see - piece by piece - how it all fits together." Facsimile from Victoria L. Perry to the Honorable Freda L. Wolfson of July 13, 2005 (dated July 11, 2005) at 5.  In her July 21, 2005 fax, she states that "[p]roviding these Defendants and the Court details of my financial information is in violation of the constitutional principle of 'cruel and unusual punishment'." Facsimile from Victoria L. Perry to the Honorable Freda L. Wolfson of July 21, 2005 (dated July 20, 2005) at 3.  In her fax to Judge Bissell dated August 3, 2005, she states: "Since 9/11, security,

---

Transcr. at 66:21-24 ("Your Honor I also would like to say that if your decision is to order sanctions I will file an appeal."); Facsimile from Victoria L. Perry to the Honorable Freda L. Wolfson of July 21, 2005 (dated July 20, 2005) at 9 ("A sanction would not deter litigation, but prolong and increase it, based on the fact that I would appeal the sanctions.").

technology and protection are of paramount concern to me.  Thus, if Judge Wolfson views me as

'paranoid' -  that's all right. ... If I choose to have a multi-camera system at my home when

threatened with any type of possible security breach or personal danger, that's all right.  But for a

federal Judge to trivialize my life's experience to stating that I have 'a camera' to watch the

'moves of the Laine family' is insulting as it puts the Laine family on a level more important than

9/11!"  Facsimile from Victoria L. Perry to the Honorable John W. Bissell of August 4, 2005

(dated August 3, 2005)(emphasis in original).  Ms. Perry cannot be objective when it comes to

these Defendants, and her subjective beliefs are not determinative.  See Abdul-Akbar, 901 F.2d

at 334 n. 2.  Indeed, describing a Court's order to provide financial information in connection

with a monetary sanctions motion as cruel and unusual punishment amply demonstrates Ms.

Perry's total lack of objectivity and realism in this litigation.  The Court finds that her claims in

this case are objectively frivolous, patently unmeritorious, unsupported in law and fact, and all

together unreasonable; monetary sanctions pursuant to Rule 11 are warranted.

   Ms. Perry indicated that she felt it was improper for the Court to ask her for financial

information before it decided whether monetary sanctions were appropriate.  However, district

courts are encouraged to "consider mitigating factors in fashioning sanctions, most particularly

the sanctioned party's ability to pay." Zuk v. Eastern Pennsylvania Psychiatric Institute of the

Medical College of Pennsylvania,103 F.3d 294, 301 (3d Cir. 1996)(citing Doering v. Union

County Bd. of Chosen Freeholders, 857 F.2d 191, 195 (3d Cir.1988)).  Having decided that

monetary sanctions are warranted, Ms. Perry is once again directed to submit to the Court and

Mr. Poplar a sworn affidavit reflecting her net assets, so that the Court has a clearer picture of

Ms. Perry's ability to pay sanctions.  At that time, the Court will issue an Order reflecting the

amount of sanctions to be paid by Ms. Perry.  If Ms. Perry fails to submit this affidavit within two weeks, and comply with the Court's Order, contempt proceedings will be initiated.

## III.  CONCLUSION

For the reasons stated above, Ms. Perry's request for my recusal is denied and the Court finds that monetary sanctions against her are appropriate.  Ms. Perry is once again directed to submit to the Court and Mr. Poplar a sworn affidavit reflecting her net assets, so that the Court has a clearer picture of Ms. Perry's ability to pay sanctions.  At that time, the Court will issue an Order reflecting the amount of sanctions to be paid by Ms. Perry.   An appropriate order will follow.

Dated: August 18, 2005

S/ Freda L. Wolfson

Honorable Freda L. Wolfson
United States District Judge

24